# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KITERAN LEE, | 1:09-cv-01842-SMS (HC) |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT, AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY |
| v. | |
| KELLY HARRINGTON, Warden | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.  Local Rule 305(b).

## BACKGROUND

Following a jury trial in the Madera County Superior Court, Petitioner was convicted of four counts of robbery (Cal. Penal Code § 211)[1], one count of burglary (§ 459), and one count of participating in a street gang (§ 186.22(a)).  (Lodged Doc. N o. 1.)  The jury also found true six sentence enhancements alleging that Petitioner was armed with a firearm during the offense (§ 12022.53(b)), and five enhancements alleging Petitioner committed the offenses for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22(b)(1)(C)).  (Id.) Petitioner was sentenced to a term of forty-nine years in state prison.  (Id.)

---

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

Petitioner filed a timely notice of appeal.  On May 4, 2007, the California Court of

Appeal, Fifth Appellate District credited Petitioner with an additional day of sentence credit, but

affirmed the judgment in all other respects.  (Lodged Doc. No. 2.)

Petitioner filed a petition for review in the California Supreme Court.  (Lodged Doc. No.

3.)  The petition was denied on September 12, 2007.  (Lodged Doc. No. 4.)

Petitioner then filed two petitions for writ of habeas corpus in the state superior court.

The first petition was filed on May 5, 2008, and denied on May 13, 2008.[2]  (Lodged Doc. Nos. 5,

6.)   The second petition was filed on January 22, 2009, and denied on January 30, 2009.

(Lodged Doc. Nos. 7, 8.)

On June 3, 2008, Petitioner filed a petition for writ of habeas corpus in the state appellate

court.  (Lodged Doc. No. 9.)  The petition was denied on June 16, 2008.  (Lodged Doc. Nos. 10.)

Petitioner also filed two petitions for writs of habeas corpus in the California Supreme

Court.  The first petition was filed on June 26, 2008, and denied on December 10, 2008.

(Lodged Doc. Nos. 11, 12.)  The second petition was filed on February 20, 2009, and denied on

July 22, 2009.  (Lodged Doc. Nos. 13, 14.)

Petitioner filed the instant petition for writ of habeas corpus on October 14, 2009.  (Court

Doc. 1.)  Respondent filed an answer to the petition on February 5, 2010, and argues the petition

is untimely and without merit.  (Court Doc. 13.)  Petitioner did not file a traverse.

## STATEMENT OF FACTS[3]

On September 16, 2003, at approximately 10:00 p.m., Stanley Cantrell,
Anna Del Bianco, Paulette Leonard, and Irma Ferrarese were in the bar of
Farnesi's Restaurant in Chowchilla.  Three Black males wearing bandanas over
their lower faces and carrying firearms strode into the bar through a side door.  Ferrarese
recognized Lee as one of the men.

---

[2]  All filing dates set forth herein reflect application of the mailbox rule.  See Rule 3(d) of the Federal Rules
Governing Section 2254 Cases; See Houston v. Lack, 487 U.S. 266 (1988) (deeming a prose prisoner's notice of
appeal filed at the moment it was delivered to prison authorities for forwarding to the clerk of court).  The Ninth
Circuit Court of Appeals held in Saffold v. Newland, 250 F.3d 1282, 1288-89 (9th Cir. 2000 amended May 23, 2001)
that the "mailbox" rule as provided for in Houston also applies to state and federal petitions with respect to
calculating the statute of limitations under the AEDPA.

[3]  The Court finds the Court of Appeal correctly summarized the facts in its May 4, 2007 opinion.  Thus, the
Court adopts the factual recitations set forth by the California Court of Appeal, Fifth Appellate District.

The three men demanded the victims turn over all their money and valuables and then ordered the four people to lie down on the floor.  As soon as the robbers left by the side door, Leonard ran out the front door and saw a blue or gray compact car with four people in it pulling away.  Leonard jumped in her car and attempted to follow the [car] on southbound Highway 99.  She eventually lost sight of the compact car.  While Leonard was pursuing the robbers, someone in the restaurant reported the robbery to law enforcement.

Around 11:00 p.m. that same evening, Williams and Lee, along with a coparticipant, Brandon Crane, attempted ro rob a liquor store in Fresno.  The burglar alarm went off almost immediately, and the three men fled the scene.

Around 12:30 a.m. the morning of September 17, three armed men wearing bandanas robbed a pizza parlor in Fresno.  After the robbers left, the police were notified.

A citizen monitoring the police scanner saw a vehicle matching the reported description and notified the police.  A high speed chase ensued on northbound Highway 99, ending near Chowchilla where the suspects' car finally was stopped.  During the chase, the suspects had thrown various items out the car window.  Williams, Lee, and Crane were taken into custody at the scene.

Over the next day or two, various items were recovered in the car and along the chase route on Highway 99, including a blue knit cap, a blue bandanna, a blue Harley Davidson cap, a blue hooded sweatshirt, a Tec-9 assault rifle with ammunition, an empty nine-millimeter ammunition box, and personal property of the victims.

Williams and Lee were charged in Madera County with four counts of robbery, burglary, and membership in a street gang as a substantive offense.  In addition, it was alleged that the robberies and burglary were committed for the benefit of and at the direction of a criminal street gang.  As to all counts, it was alleged that Williams and Lee personally used a firearm.  It also was alleged that Lee suffered a prior serious felony conviction and served a prior prison term.  Williams was alleged to have served two prior prison terms.

At trial, Sergeant Thomas Trinidad of the Merced Police Department testified as an expert on gangs.  Trinidad described the initiation process for gang members, the significance of tattoos, hand signs, graffiti, and style of dress.  In the gang culture, committing property crimes is seen as supporting the gang financially, while committing violent crimes is seen as supporting the gang by generating fear of the gang among other gangs and the general public.  Violence also serves to deter victims from testifying.  Property crimes are committed to support the gang lifestyle because most gang members are unemployed.

Trinidad is familiar with a criminal street gang known as the Merced Gangster Crips.  The gang consists of 86 members or affiliates, uses the color blue as an identifying color, including the wearing of blue bandanas, and has robbery as one of its primary activities.

Based upon Lee's past admissions, his contacts with Merced police, and state parole records, Trinidad was of the opinion that Lee was a member of the Merced Gangster Crips.  Trinidad also testified that Williams was a member of the same gang, based upon gang photos, the "MGC" tattoo on Williams's arm, a chest tattoo reading "MG Crip gangster," and the moniker "Mr. Dice," which also was tattooed on Williams.

1       A hypothetical fact pattern, based upon the Farnesi's robbery, was posed
2   to Trinidad.  He opined that each of the three perpetrators would receive a benefit
    from the crime, as well as the gang as a whole, and each perpetrator and the gang
3   would receive a monetary benefit and an increase in status.  It was to the gang's
    benefit to have multiple gang members involved in the commission of a crime
4   because it increased the chance of a successful outcome.  Since gang members
    tend to be unemployed, their main means of economic support is by committing
5   crimes for profit.

6       Trinidad also testified that if gang members went together to a location for
    the purpose of committing a crime, it would tend to show the crime was
7   committed for the benefit of, or at the direction of, the gang.  It also was significant, in Trinidad's
    opinion, that Lee, Williams, and Crane wore blue clothing and blue bandanas during the robbery.

8       Additionally, Trinidad presented various court records establishing that the
    required predicate offenses had been committed by the Merced Gangster Crips.

9       The jury found Williams and Lee guilty as charged of all substantive
10  offenses and found the enhancements true.  In a bifurcated trial on the prior
    conviction allegations, Lee admitted to one prior prison term and Williams
11  admitted to two prior prison terms.

12  (Exhibit 1, at 2-5.)

13                          DISCUSSION

14  I.      Timeliness of Petition

15      A.      Limitation Period for Filing a Petition for Writ of Habeas Corpus

16      On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

17  of 1996 (AEDPA).  The AEDPA imposes various requirements on all petitions for writ of habeas

18  corpus filed after the date of its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059,

19  2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), cert. denied, 118

20  S.Ct. 586 (1997).  The instant petition was filed on October 14, 2009, and thus, it is subject to the

21  provisions of the AEDPA.

22      The AEDPA imposes a one year period of limitation on petitioners seeking to file a

23  federal petition for writ of  habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, Section 2244,

24  subdivision (d) reads:

25      (1)  A 1-year period of limitation shall apply to an application for a writ of
    habeas corpus by a person in custody pursuant to the judgment of a State court.
26  The limitation period shall run from the latest of –

27          (A) the date on which the judgment became final by the conclusion of
    direct review or the expiration of the time for seeking such review;
28

4

1    (B) the date on which the impediment to filing an application created by
     State action in violation of the Constitution or laws of the United States is
2    removed, if the applicant was prevented from filing by such State action;

3
     (C) the date on which the constitutional right asserted was initially recognized
4    by the Supreme Court, if the right has been newly recognized by the Supreme Court and
     made retroactively applicable to cases on collateral review; or
5
     (D) the date on which the factual predicate of the claim or claims
6    presented could have been discovered through the exercise of due diligence.

7    (2) The time during which a properly filed application for State post-
     conviction or other collateral review with respect to the pertinent judgment or
8    claim is pending shall not be counted toward any period of limitation under this
     subsection.
9

10   In most cases, the limitation period begins running on the date that the petitioner's direct

11   review became final.  Here, on September 12, 2007, the California Supreme Court denied review.

12   (Lodged Doc. No. 2.)  Thus, direct review became final on December 11, 2007, when the time to

13   file a petition for certiorari in the Supreme expired.  See Patterson v. Stewart, 251 F.3d 1243,

14   1246 (9th Cir. 2001).  The statute of limitations period commenced the following day on

15   December 12, 2007, and was set to expire one-year later on December 11, 2008.  Id. at 1245

16   (holding that Rule 6(a) of the Federal Rules of Civil Procedure governs the calculation of

17   statutory tolling applicable to the one year limitations period.)

18       B.      Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

19   Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed

20   application for State post-conviction or other collateral review with respect to the pertinent

21   judgment or claim is pending shall not be counted toward" the one year limitation period.  28

22   U.S.C. § 2244(d)(2). In Carey v. Saffold, the Supreme Court held the statute of limitations is

23   tolled where a petitioner is properly pursuing post-conviction relief, and the period is tolled

24   during the intervals between one state court's disposition of a habeas petition and the filing of a

25   habeas petition at the next level of the state court system. 536 U.S. 214, 215 (2002); see also

26   Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999), cert. denied, 120 S.Ct. 1846 (2000).

27   Nevertheless, state petitions will only toll the one-year statute of limitations under § 2244(d)(2) if

28   the state court explicitly states that the post-conviction petition was timely or was filed within a

1    reasonable time under state law. <u>Pace v. DiGuglielmo</u>, 544 U.S. 408 (2005); <u>Evans v. Chavis</u>,

2    546 U.S. 189 (2006). Claims denied as untimely or determined by the federal courts to have been

3    untimely in state court will not satisfy the requirements for statutory tolling. <u>Id</u>.

4         At the time Petitioner filed the first state post-conviction petition on May 5, 2008-145

5    days of the limitations period had expired. <u>See Nino v. Galaza</u>, 183 F.3d 1003, 1006-1007 (9th

6    Cir. 1999). Respondent does not argue that Petitioner is not entitled to tolling during the

7    pendency of the first petition filed in the superior court to the denial by the California Supreme

8    Court on December 10, 2008. <u>Carey v. Saffold</u>, 536 U.S. at 215.

9         Respondent argues that Petitioner is not entitled to interval or statutory tolling for the

10   second round of state petitions beginning on January 22, 2009 in the superior court through

11   denial by the California Supreme Court on July 22, 2009. In denying the state petition filed on

12   January 22, 2009, the superior court stated, "Petitioner is raising the same issues in this petition

13   that were previously denied by the court. Accordingly, the petition is denied." (Lodged Doc. No.

14   8.) Respondent argues this denial is a denial based on untimeliness and cites <u>In re Clark</u>, 5

15   Cal.4th 750, 769 (1993). The Court does not find Respondent's argument to be persuasive. The

16   filing of the second round of petitions is more appropriately classified as successive petitions

17   because they raised the same claims that had previously been denied. In such circumstances, the

18   determination of whether these type of petitions meet the "properly filed" requirement for

19   statutory tolling is dependent on whether state law required the petitioner to obtain pre-filing

20   authorization prior to filing the petition. Under California law, the procedural bar to presenting

21   successive petitions has been termed discretionary and is described as a policy of the state courts.

22   <u>See In re Clark</u>, 5 Cal.4th 750,767 (1993) (citing <u>In re Terry</u>, 4 Cal. 3d 911, 921 n.1 (1971); <u>In re</u>

23   <u>Bevill</u>, 68 Cal.2d 854, 863 n.9 (1968); <u>Ex parte Horowitz</u>, 33 Cal.2d 534, 546 (1949). Therefore,

24   because California law does not require a petitioner to seek court approval prior to filing a

25   successive petition, the second round of petitions were "properly filed" as it was a condition to

26   obtaining relief not a condition to filing. <u>See e.g. Smith v. Wall</u>, 276 F.3d 340, 344 (7th Cir.

27   2002) (successive post-conviction collateral petition "properly filed" under Illinois law because

28   petitioner not required to seek approval by court prior to filing successive petition.) With the

6

benefit of statutory tolling for the second round of post-conviction petitions, the instant petition is timely, and Respondent's argument to the contrary is rejected. The Court will therefore reach the underlying merits of the petition.

II.     Analysis of Merits of Petition

    A.      Jurisdiction

    Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Madera County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

    On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

    B.      Standard of Review

    Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

        (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

        (2) resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133,  141 (2005) citing Williams (Terry) v. Taylor, 529 U.S. 362, 405-06 (2000).  A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id., quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (per curiam).  "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted).  "Rather, that application must be objectively unreasonable." Id. (citations omitted).

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law.  See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion.  See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991).  However, where the state court decided an issue on the merits but provided no reasoned decision, courts conduct "an independent review of the record . . . to determine whether the state court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

C.      Ineffective Assistance of Counsel

Petitioner contends that trial counsel was ineffective for failing to use peremptory

1   challenges to remove two allegedly biased jurors.

2          1.    Background

3          During voir dire, Prospective Juror No. 11 advised the court that she knew of the owner

4   of Farnesi's Restaurant,[4] and also "somebody who works there."  The trial court asked the juror if

5   he/she knew "anything about this particular case?"  (Id.)  The juror responded, "No, I don't."

6   (Id.)  The court then asked, "Anything about that would have any effect on your ability to fairly

7   decide the case?"  (Id.)  The juror again stated, "No."  (Id.)  The trial court then confirmed that

8   the owner would not be a witness in the case.  (Id.)  This juror was part of the jury panel in this

9   case.

10         During voir dire, Prospective Juror No. 44 also indicated that she knew prospective

11  witness, Anna Del Bianco, as "an acquaintance."  (ART [May 4, 2005] at 76.)  This juror assured

12  the court that her acquaintance would not affect her ability to fairly judge the case.  (Id.)

13         2.    Applicable Law

14         The law governing ineffective assistance of counsel claims is clearly established for the

15  purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe,

16  151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective

17  assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S.

18  668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First,

19  the petitioner must show that counsel's performance was deficient, requiring a showing that

20  counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by

21  the Sixth Amendment.  Strickland, 466 U.S. at 687.  The petitioner must show that counsel's

22  representation fell below an objective standard of reasonableness, and must identify counsel's

23  alleged acts or omissions that were not the result of reasonable professional judgment

24  considering the circumstances.  Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

25  (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges

26  a strong presumption that counsel's conduct falls within the wide range of reasonable

27

28         [4] The incident took place at Farnesi's Restaurant.  (ART [May 3, 2005] at 20.)

9

professional assistance.  Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v.
Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must show that counsel's errors were so egregious as to deprive
defendant of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  The court must
also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's
ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356,
1461 (9th Cir. 1994).  More precisely, petitioner must show that (1) his attorney's performance
was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that
(2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would
have been different.

A court need not determine whether counsel's performance was deficient before
examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.
Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984).  Since it is necessary to prove
prejudice, any deficiency that does not result in prejudice must necessarily fail.

Ineffective assistance of counsel claims are analyzed under the "unreasonable
application" prong of Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v. Middle, 215 F.3d
1058, 1062 (2000).

3.   Analysis

Petitioner presented this claim to the California Supreme Court by way of his petition for
writ of habeas corpus.  (Lodged Doc. No. 11.)  The petition was summarily denied on the merits.
(Lodged Doc. No. 12.)  In such instances, this Court must conduct an independent review of the
record to determine whether the state court erred in its application of controlling federal law.
Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir.
2000).

In this instance, the trial court found no indication that either of these jurors were biased
against Petitioner because of their acquaintance with a witness and owner of the restaurant where
the incident occurred.  Petitioner's conclusory assertion that these jurors were biased against him
simply due to their acquaintance is not persuasive.  Petitioner has not presented the court with

any actual evidence that a member of his jury "had such fixed opinions that they could not judge impartially the guilt of the defendant." Patton v. Yount, 467 U.S. 1025, 1035 (1984). Moreover, Petitioner has not demonstrated that trial counsel was deficient by allowing these jurors to remain on the jury. In such instances, this Court must review counsel's decision with "a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." Strickland, 466 U.S. at 689. Counsel may have very well made a reasonable and tactical decision in not exercising a peremptory challenge against these jurors, including observing something about their demeanor that signaled actual bias in favor of Petitioner and against their respective acquaintances or concern regarding a potential replacement juror to be seated on the panel. Furthermore, given that both jurors unequivocally assured the trial court that their respective acquaintances would not affect their ability to try the case fairly, counsel may have likely concluded a peremptory challenge would be a waste. In sum, the record is devoid of any evidence that these jurors were biased or that Petitioner was prejudiced by counsel's failure to objection to the inclusion of these jurors on the panel. Accordingly, Petitioner's claim must be denied.

       D.    <u>Trial Court Err in Failure to Remove Two Allegedly Biased Jurors</u>

In a similar vein, Petitioner contends that he was denied due process because the trial court failed to sua sponte remove the two allegedly biased jurors. As with the prior claim, Petitioner presented this claim to the California Supreme Court in his petition for writ of habeas corpus, which was summarily denied on the merits. (Lodged Doc. Nos. 11, 12.)

"In all criminal prosecutions," state and federal, "the accused shall enjoy the right to . . . trial . . . by an impartial jury," U.S. Const., Amends. 6 and 14; see Duncan v. Louisiana, 391 U.S. 145 (1968). "The central inquiry in determining whether a juror should be removed for cause is whether that juror holds particular belief or opinion that will prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." United States v. Padilla-Mendoza, 157 F.3d 730, 733 (9th Cir. 1998). The determination of whether the juror could be impartial is a question of fact entitled to presumption under § 2254(d). Patton v. Yount, 467 U.S. at 1036; Rushen v. Spain, 464 U.S. 114, 120 (1983). Because

1   resolution of a juror impartiality issue "depends heavily on the trial court's appraisal of witness

2   credibility and demeanor" the Supreme Court "has reasoned that a trial court is better positioned

3   to make decisions of this genre, and has therefore accorded the judgment of the jurist-observer

4   'presumptive weight.'" Thompson v. Keohane, 516 U.S. 99, 111 (1995).

5       The two jurors promptly notified the court of their acquaintances to a witness, and the

6   owner and employee of the restaurant where the incident occurred.  The trial court questioned the

7   jurors to determine if there acquaintances would interfere with their ability to be impartial.

8   Indeed, Petitioner does not allege that the trial court's inquiry was inadequate.  Petitioner has not

9   shown the jurors acquaintances prevented them from impartially performing their duties as

10  jurors.  As the trial court was in the best position to weigh and evaluate the jurors' impartiality,

11  the state court reasonably rejected this claim consistent with clearly established Supreme Court

12  precedent.

13       E.    Insufficient Evidence to Support Street Gang Enhancements

14       Petitioner contends that there is insufficient evidence to support the jury's findings that he

15  committed his enumerated offenses for the benefit of, at the direction of, or in association with a

16  criminal street gang within the meaning of section 186.22(b)(1)(C).  Petitioner presented this

17  claim on direct appeal to the California Court of Appeal and California Supreme Court.  Because

18  the California Supreme Court's opinion is summary in nature, this Court "looks through" that

19  decision and presumes it adopted the reasoning of the California Court of Appeal, the last state

20  court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3,

21  111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through"

22  presumption that higher court agrees with lower court's reasoning where former affirms latter

23  without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding

24  federal courts look to last reasoned state court opinion in determining whether state court's

25  rejection of petitioner's claims was contrary to or an unreasonable application of federal law

26  under § 2254(d)(1)).

27

28       In denying Petitioner's claim, the state appellate court reasoned, in part, as follows:

**Role of expert testimony**

The prosecution may rely on expert testimony to establish the required elements of the gang enhancement.  (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 322.)  Expert testimony concerning the culture, habits, and psychology of a gang is permissible because these subjects are "'sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' [Citation.]" (Evid. Code, § 801, subd. (a)); *People v. Gardeley* (1996) 14 Cal.4th 604, 617.) An individual's membership in a criminal street gang also is a matter beyond the common knowledge of jurors and thus a proper subject of expert testimony. (*People v. Gamez* (1991) 235 Cal.App.3d 957, 965, 286 Cal.Rptr. 894, disapproved on other grounds in *Gardeley*, at p. 624, fn. 10.)  As stated in *People v. Valdez* (1997) 58 Cal.App.4th 494, "determining whether someone is involved [in a gang] and the level of involvement is not a simple matter and requires the accumulation of a wide variety of evidence over time and its evaluation by those familiar with gang urcana in light of pertinent criteria."  (*Id*. at p. 507.)

Expert testimony is admissible to address the definition of a criminal street gang, the requisite primary activities and predicate offenses, and the gang's past criminal conduct and ongoing criminal nature. (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1463-1465.) Expert testimony also is admissible regarding the size, composition, or existence of a gang, an individual's membership in or association with a gang, gang-related tattoos, and gang-related clothing and indicia. (*People v. Killebrew* (2002) 103 Cal.App.4th 644, 656-657.)

Numerous cases have held that an expert may rely on hearsay in forming his or her opinion. (See *People v. Catlin, supra*, 26 Cal.4th at p. 137; *People v. Montiel* (1993) 5 Cal.4th 877, 918-919; *People v. Duran, supra*, 97 Cal.App.4th at p. 1463.) Expert testimony may be premised on material that is not admitted into evidence-or on material that is not ordinarily admissible, such as hearsay-as long as that material is reliable and of a type that is reasonably relied upon by experts in the particular field in forming their opinions. (*People v. Gardeley, supra*, 14 Cal.4th at p. 618.) An expert witness whose opinion is based on such inadmissible matter can, when testifying, describe the material that forms the basis of his or her opinion. (*Ibid.*) "[A] gang expert may rely upon conversations with gang members, his or her personal investigations of gang-related crimes, and information obtained from colleagues and other law enforcement agencies. [Citations.]" (*Duran*, at p. 1463.)

**Gang purpose and intent**

Trinidad's opinion that Williams and Lee were gang members and committed the offenses for the benefit of the gang was based on law enforcement records, statements of Williams and Lee, statements of other members of the Merced Gangster Crips, the physical evidence of tattoos and clothing, and Trinidad's knowledge of gang culture, all matters on which expert testimony is appropriate. (*People v. Sengpadychith, supra*, 26 Cal.4th at p. 322.) Even if Trinidad relied in part on information or material that constitutes hearsay in forming his opinion, it is of the type that is reasonably relied upon by experts in the field and his reliance on the information is permissible. (*People v. Duran, supra*, 97 Cal.App.4th at pp. 1463-1465.)

Both Williams and Lee were members of the Merced Gangster Crips, drove together to Chowchilla, and committed the offenses together. There also was

sufficient evidence that both wore blue bandanas and clothing. Trinidad opined in response to a hypothetical question that the use of blue bandanas and blue clothing during the commission of the offenses was a significant factor in identifying the crime as gang related and the perpetrators as having the intent to promote the gang. Trinidad also testified that robbery was one of the primary activities of the Merced Gangster Crips, and that the commission of robberies enhanced the status of the gang and gang members and provided a source of income for gang activities. Additionally, he noted that all of the perpetrators of the Farnesi robbery were members of the Merced Gangster Crips.

A gang expert may testify as to the motivation for a crime and whether the crime is committed for the benefit of a gang. (*People v. Zermeno* (1999) 21 Cal.4th 927, 930.) In response to a hypothetical question based upon the scenario surrounding the Farnesi robbery, Trinidad testified that, in his opinion, the offense was committed for the benefit of the gang, with the intent to promote the gang. The testimony of a single witness is sufficient for conviction. (*People v. Panah* 2005) 35 Cal.4th 395, 489.)

Williams and Lee rely on the cases of *People v. Killebrew, supra,* 103 Cal.App.4th 644 and *In re Frank S.* (2006) 141 Cal.App.4th 1192. They are distinguishable. In both *Killebrew* and *Frank S.* the experts testified regarding a specific, subjective intent harbored by a specific individual at a specific point in time, rather than in response to a hypothetical question that the perpetrators had the intent to promote the gang. Both cases acknowledge that it is appropriate for experts to testify on the issue of any gang motivation for a crime. (*Frank S.,* at p. 1197; *Killebrew,* at pp. 656-657.)

Williams and Lee also challenge the sufficiency of the evidence providing the factual support for Trinidad's opinions. They claim that there was conflicting evidence concerning the colors of the bandanas worn by and the general attire of the robbers. The presence of conflicting evidence is of no consequence to our review. The testimony of one witness can provide substantial evidence and is sufficient for conviction. Regardless of whether the evidence presented at trial is direct or circumstantial, conflicting or undisputed, the relevant inquiry on appeal remains whether any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. (*People v. Towler* (1982) 31 Cal.3d 105, 118.)

Here, the evidence was sufficient for a reasonable jury to have found that Williams and Lee committed the offenses for the benefit of a street gang with the intent to promote the gang.

(Lodged Doc. No. 2, Opinion, at 6-9.)

The law on insufficiency of the evidence claim is clearly established.  The United States

Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a

federal court must determine whether, viewing the evidence and the inferences to be drawn from

it in the light most favorable to the prosecution, any rational trier of fact could find the essential

14

1   elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).

2   Sufficiency claims are judged by the elements defined by state law.  Id. at 324, n. 16.

3        With regard to the sufficiency of the evidence to support a gang enhancement under

4   section 186.22, the Ninth Circuit has recently held:

5        California law requires the prosecutor to prove two things.  First, the
         prosecutor must demonstrate that the defendant committed a felony "for the
6        benefit of, at the direction of, or in association with [a] criminal street gang."  Cal.
         Penal Code § 186.22(b)(1).  Second, the prosecutor must show that the defendant
7        committed the crime "with the specific intent to promote, further, or assist in any
         criminal conduct by gang members." Id.  We have previously recognized the
8        importance of keeping these two requirements separate, and have emphasized that
         the second step is not satisfied by evidence of mere membership in a criminal
9        street gang alone.

10  Briceno, v. Scribner, 555 F.3d 1069, 1078 (9th Cir. 2009) (citing Garcia v. Carey, 395 F.3d 1099,

11  1102-1103 & n.9 (9th Cir. 2005).  In Briceno, the gang expert testified in terms of "generalities"

12  that the crimes could glorify the gang, but did not provide direct or circumstantial evidence

13  regarding the defendant's specific intent.  Briceno, 555 F.3d at 1078.  In such circumstances, the

14  Ninth Circuit held the expert testimony did not establish the petitioner's specific intent in

15  committing the crimes.  Id. at 1078-1079.  This particularly so in Briceno because the defendant

16  submitted proof of a different motivation, i.e. personal gain.  However, in this instance, the gang

17  expert offered circumstantial evidence in support of Petitioner's specific intent to commit the

18  crimes for the benefit, at the direction of, or in association with the criminal street gang.  Both

19  defendants were known members of the Merced Gangster Crips, drove in the same vehicle

20  together to commit the crimes, wore blue bandanas and clothing reflective of the color associated

21  with the Merced Crips during the crimes, and the robberies both enhanced the status of the gang

22  and provided income to further gang activities.  Thus, Petitioner committed the crimes with a

23  fellow gang member while both were wearing gang paraphernalia and colors, for the specific

24  purpose of obtaining funds to promote the gang.  This was the precise type of evidence lacking in

25  Briceno as the Ninth Circuit specifically stated that "a jury could reasonably conclude that the

26  defendant committed the crime with the specific intent to benefit the gang, as the defendant

27  either committed the crime to protect gang "turf" or brandished gang signs or a gang moniker

28  during the attack."  Briceno, 555 F.3d at 1081.  Accordingly, the state court's denial of this claim

was not an unreasonable application of <u>Jackson</u>, and the claim must be denied.

<u>ORDER</u>

Based on the foregoing, it is HEREBY ORDERED that:

1.  The instant petition for writ of habeas corpus is DENIED;

2.  The Clerk of Court is directed to enter judgment in favor of Respondent; and

3.  The court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," i.e., when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong"; <u>Hoffman v. Arave</u>, 455 F.3d 926, 943 (9th Cir. 2006) (same).  In the present case, the Court finds that reasonable jurists would not find it debatable that the state courts' decision denying Petitioner's petition for writ of habeas corpus were not "objectively unreasonable."

IT IS SO ORDERED.

**Dated:     April 13, 2010                      /s/ Sandra M. Snyder**
                                                       UNITED STATES MAGISTRATE JUDGE